# EXHIBIT 1

THE STATE OF NEW HAMPSHIRE

STRAFFORD, SS.                                            SUPERIOR COURT

Kaitlin Hudson
501 White Cedar Blvd.
Portsmouth, NH 03801

v.

Dr. Michael J. O'Connell's Pain Care Center, Inc. and Dr. Michael J. O'Connell
255 Route 108
Somersworth, NH 03878

Docket No. 219-2011-CV-00062

**FIRST AMENDED VERIFIED COMPLAINT**

## I. PARTIES

1. Plaintiff Kaitlin Hudson ("Hudson") is an individual residing at 501 White Cedar Blvd., Portsmouth, New Hampshire.

2. Dr. Michael J. O'Connell's Pain Care Center, Inc. d/b/a Pain Care Centers ("Pain Care") is a New Hampshire corporation with a principle place of business at 255 Route 108, Somersworth, New Hampshire.

3. Dr. Michael J. O'Connell ("O'Connell") is a physician with a principle place of business at 255 Route 108, Somersworth, New Hampshire.

## II. FACTUAL ALLEGATIONS

4. On or about July 2008 Pain Care hired Hudson as an Office Assistant.

5. Shortly after Hudson began working for Pain Care, and at a time when O'Connell was her boss, he began a sexual relationship with her.

6. The parties' relationship grew to the point that they moved into O'Connell's Barrington, New Hampshire home.

7. During the relationship O'Connell was both controlling and abusive.

8. While Hudson worked for Pain Care and was having an intimate relationship with O'Connell, he also treated her as a physician by providing her prescription medication.

9. Several times O'Connell threatened Hudson that if she did not engage in sexual acts with him, he would terminate her employment.

10. Hudson wanted the relationship to end. O'Connell consistently and repeatedly told Hudson that if it did, he would terminate her employment.

11. Hudson was not in the position, financially or emotionally, to live without a job and, without a job, she could not afford to find a place to live.

12. Hudson and O'Connell moved to his home in Wells, Maine.

13. O'Connell continued to threaten that if Hudson did not engage in sexual acts with him he would kick her out of the house, end her employment, and file false reports with the police about Hudson allegedly stealing from him.

14. While at the office, O'Connell subjected Hudson to different, and more strict, standards than other employees.

15. In the fall of 2009, Hudson suspected that O'Connell was dating someone else. Hudson suspected that she knew who it was.

16. The woman had lived at O'Connell's Wells Maine beach house prior to Hudson and O'Connell moving there. Before Hudson had found out about this relationship, O'Connell had told her that this woman's husband had a case of herpes that required hospitalization.

17. After Hudson realized that O'Connell was involved with this woman, Hudson had herself tested.

18. For the only time in her life, and at a time when she was not having a sexual relationship with anyone other than O'Connell, Hudson tested positive for herpes.

19. In or about early December, while Hudson was at work, employees began saying things to her about having herpes. This is <u>not</u> information that Hudson shared with any co-employees.

20. Hudson then examined the office computer system medical records and observed that Pain Care had failed to mark her employee file as private.

21. Pain Care failed to protect Hudson's medical information, therefore, from other employees.

22. This occurred at a time when O'Connell was actively treating Hudson and prescribing Valtrex to her for herpes.

23. Hudson discussed this matter with individuals in the Human Resources office.

24. Human Resources personnel advised Hudson to address this issue directly with O'Connell. This individual then temporarily relieved Hudson of her job responsibilities so that she could go into another room and speak with O'Connell.

25. Hudson called O'Connell directly to speak about this issue. Hudson advised him that someone violated her privacy and that employees were discussing her medical condition.

26. O'Connell told Hudson during this call that if she "did not stop talking to H.R. he would f***ing fire" her.

27. During this call O'Connell then mentioned that someone filed an anonymous complaint against him with the State Board of Medicine.

28. O'Connell told Hudson that the complaint mentioned that Hudson was married when she became employed and that she left her relationship with her husband to be with O'Connell.

3

29. O'Connell said that the detail in the letter was "pretty much dead on." He wanted to know who Hudson thought wrote it.

30. O'Connell then said "you're going to write a letter to the Medical Board saying it is not true or I will f***ing fire you. Got it?" Hudson was crying. O'Connell then told Hudson, "we're going to meet about this tomorrow."

31. Hudson went directly home. After observing how upset Hudson was, the individual from the Human Resources department sent Hudson a text message that evening to make sure that she was alright.

32. At approximately 11:00 a.m. O'Connell asked Hudson to meet him in a conference room. He showed her a copy of the complaint. O'Connell then said, "here's what I'm going to need you to do . . ." Hudson told him "I will not lie to the Medical Board for you." O'Connell responded, "you're going to ruin my life and cost 140 people their jobs." The conversation ended. Hudson went directly home.

33. Hudson has not returned to work for O'Connell or Pain Care.

34. As a result of O'Connell's actions plaintiff has suffered and continues to suffer from *inter alia* depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation.

## COUNT I

## (CONSTRUCTIVE DISCHARGE)

35. Plaintiff repeats and incorporates by reference the allegations contained in all prior paragraphs to this complaint.

36. Defendants' actions were motivated by bad faith, retaliation or malice.

37. Hudson's working conditions were so difficult and intolerable that a reasonable person subjected to them would feel forced to resign.

38. As a result of the foregoing, plaintiff suffered and continues to suffer severe physical and emotional harm as a proximate and direct result of defendant's actions. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation. As a direct and proximate result of the foregoing, the plaintiff has suffered, continues to suffer, and will suffer into the future direct and consequential damages.

39. Plaintiff is entitled to and hereby demands compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT II

## (BATTERY)

40. Plaintiff repeats and incorporates by reference the allegations contained in all prior paragraphs to this complaint.

41. Hudson would not have consented to sexual relations with O'Connell if she had known he had been exposed to herpes.

42. O'Connell's failure to disclose his exposure to herpes while having sexual relations with Hudson constitutes intentional and harmful contact.

43. The plaintiff suffered and continues to suffer severe physical and emotional harm as a proximate and direct result of each defendant's actions. This includes, but is not limited to,

depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation. As a direct and proximate result of the foregoing, the plaintiff has suffered, continues to suffer, and will suffer into the future direct and consequential damages.

44. The plaintiff has experienced and/or suffered as a direct and proximate result of the defendants' actions significant, substantial, and consequential injury.

45. Defendant's actions were wanton, malicious, and oppressive and are sufficient to entitle plaintiff to enhanced compensatory and/or punitive damages.

46. Plaintiff is entitled to compensatory and enhanced compensatory damages all within the jurisdictional limits of this Court.

## COUNT III

### (INVASION OF PRIVACY)

47. The plaintiff adopts and incorporates by reference all prior paragraphs to this complaint.

48. As a patient of O'Connell, the plaintiff had a reasonable expectation of privacy in her medical records.

49. Defendants failed to properly safeguard plaintiff's medical records.

50. Plaintiff's privacy was invaded because her personal medical information was not protected.

51. The harm the plaintiff suffered is of a kind that normally results from such an invasion.

52. The plaintiff has suffered and continues to suffer special damages of which the invasion is a legal cause. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe

embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation.

53. Plaintiff is entitled to compensatory and enhanced compensatory damages all within the jurisdictional limits of this Court.

## COUNT IV

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

54. The plaintiff adopts and incorporates herein by reference all prior paragraphs to this complaint.

55. Defendants' conduct constitutes extreme and outrageous conduct.

56. Defendants intentionally or recklessly caused severe emotional distress to the plaintiff.

57. The plaintiff suffered and continues to suffer bodily severe physical and emotional harm as a proximate and direct result of defendant's actions. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation.

58. Plaintiff is entitled to compensatory and enhanced compensatory damages all within the jurisdictional limit of this Court.

## COUNT V

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

59. The plaintiff adopts and incorporates by reference all prior paragraphs of this complaint.

60. Defendants owed the plaintiff a duty not to negligently inflict emotional distress upon the plaintiff.

61. Defendants' breach of this common law duty directly and proximately caused the plaintiff mental and emotional harm that is accompanied by objective physical symptoms.

62. This emotional distress was reasonably foreseeable given the nature of Defendants' negligent acts.

63. The plaintiff has suffered severe physical and emotional distress as a direct and proximate result of defendant's negligence. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation.

64. Plaintiff is entitled to compensatory and enhanced compensatory damages all within the jurisdictional limits of this Court.

## COUNT VI

### (SEXUAL HARASSMENT PURSUANT TO RSA 354-A AND TITLE VII)

65. The plaintiff adopts and incorporates by reference all prior paragraphs of this complaint.

66. O'Connell's actions constitute sexual harassment in violation of RSA 354-A and Title VII, 42 U.S.C. § 2000(e) *et seq.*.

67. Defendant Pain Care had actual knowledge, knew, or should have known of O'Connell's sexual harassment of Hudson and failed to take prompt, effective remedial action reasonably calculated to end the harassment and that would have enabled Hudson to continue working without being subjected to a hostile work environment.

68. The action that Defendant Pain Care took was not reasonably calculated to stop O'Connell's conduct or even to discourage him from continuing to engage in harassment. Indeed, the remedy that Pain Care proposed was so inconsequential as to exhibit an indifference

to O'Connell's conduct which provided O'Connell an attitude of permissiveness and which, therefore, amounted to discrimination.

69. As a result of the foregoing, plaintiff suffered and continues to suffer severe physical and emotional harm as a proximate and direct result of defendant's actions. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation. As a direct and proximate result of the foregoing, the plaintiff has suffered, continues to suffer, and will suffer into the future direct and consequential damages.

70. Plaintiff is entitled to and hereby demands compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

71. Defendant's actions constitute gross negligence and were wanton, malicious, and oppressive and are sufficient to entitle plaintiff to enhanced compensatory and/or punitive damages.

72. Plaintiff is entitled to and hereby demands compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT VII

### (RETALIATION)

73. The plaintiff adopts and incorporates by reference all prior paragraphs of this complaint.

74. Plaintiff Hudson engaged in a statutorily protected activity. Among other things, she refused to write a false statement for her employer and provide same to the Board of Medicine.

75. Hudson suffered an adverse employment action. Among other things, after reporting O'Connell's harassment, complaining about her privacy being violated, and being subjected to harassment regarding false reporting, Hudson was subjected to additional harassment.

76. The protected activity and the adverse employment action were causally connected.

77. At the time of his conduct, O'Connell was a supervisor or management personnel who orchestrated the harassment. In addition, Pain Care through its inadequate investigation and non-response and/or inadequate response to its prior knowledge of O'Connell's conduct with Hudson, acquiesced in O'Connell's conduct so as to condone and encourage it.

78. As a result of the foregoing, plaintiff suffered and continues to suffer severe physical and emotional harm as a proximate and direct result of defendant's actions. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation. As a direct and proximate result of the foregoing, the plaintiff has suffered, continues to suffer, and will suffer into the future direct and consequential damages.

79. Plaintiff is entitled to and hereby demands compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT VIII

## (QUID PRO QUO HARASSMENT)

80. The plaintiff adopts and incorporates by reference all prior paragraphs of this complaint.

81. O'Connell was Hudson's supervisor.

82. O'Connell explicitly and implicitly made sexual requests and committed sexual acts toward Hudson while expressing or indicating that if Hudson accepted O'Connell's sexual requests or acquiesced in O'Connell's sexual conduct neither Hudson's job, nor the terms of Hudson's employment would be effected.

83. These comments and these actions were unwanted and unwelcome.

84. On those occasions when Hudson explicitly rebuked O'Connell's advances or identified O'Connell's comments as offensive and/or inappropriate, O'Connell subjected Hudson to abusive treatment which included, but was not limited to disclosure of her personal medication information to office staff, assigning Hudson to job tasks that were not within her job responsibilities and then subjecting Hudson to negative job reviews while claiming that Hudson did not spend enough time performing the functions of her job.

85. As a result of this quid pro quo harassment, plaintiff suffered and continues to suffer severe physical and emotional harm as a proximate and direct result of defendant's actions. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation. As a direct and proximate result of the foregoing, the plaintiff has suffered, continues to suffer, and will suffer into the future direct and consequential damages.

86. Defendant Pain Care was aware of O'Connell's actions and could have implemented significant remedies, but chose not to, thus ratifying O'Connell's wrongful conduct.

87. Plaintiff is entitled to and hereby demands compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT IX

### (HOSTILE WORK ENVIRONMENT)

88. Plaintiff repeats and incorporates by reference the allegations contained in all prior paragraphs to this complaint.

89. The sexual harassment of plaintiff created an oppressive, hostile, intimidating and/or offensive work environment for plaintiff and interfered with her emotional well-being and ability to perform her duties.

90. The sexual harassment was sufficiently severe and pervasive as to materially alter plaintiff's conditions of employment, and to create a hostile and abusive working environment.

91. As a result of the hostile work environment, plaintiff suffered and continues to suffer severe physical and emotional harm as a proximate and direct result of defendant's actions. This includes, but is not limited to, depression, anxiety, post traumatic stress, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair and/or tremendous public humiliation. As a direct and proximate result of the foregoing, the plaintiff has suffered, continues to suffer, and will suffer into the future direct and consequential damages.

92. Defendant Pain Care was aware of O'Connell's actions and could have implemented significant remedies, but chose not to, thus ratifying O'Connell's wrongful conduct.

93. Plaintiff is entitled to and hereby demands compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## JURY TRIAL

The plaintiff requests a jury trial as to all Counts herein.

Respectfully submitted,

KAITLIN HUDSON

By and through her attorneys,
SHERMAN LAW, PLLC

Date: 5/23/2011

_____
John P. Sherman #12536
Sherman Law, PLLC
155 Fleet Street
Portsmouth, NH  03801
Ph.(603) 570-4837
jsherman@johnshermanlaw.com

## VERIFICATION

I, Kaitlin Hudson, swear that the information contained in this Complaint, is true to the best of my knowledge, information and belief.

*Kaitlin Hudson*          Date: 5-24-11
Kaitlin Hudson


STATE OF NEW HAMPSHIRE

COUNTY OF Rockingham

The foregoing instrument was acknowledged before me this May 24, 2011 (date) by Kaitlin Hudson (name of person acknowledged), who is known to the person taking the acknowledgment.

Notary Public *Katrina Ricker*

Print Name: Katrina Ricker

My commission expires:

March 24, 2015

[Notary Seal: KATRINA RICKER, MY COMMISSION EXPIRES MAR. 24, 2015, NOTARY PUBLIC, NEW HAMPSHIRE]