```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

Kaitlin Hudson

   v.                                        Civil No. 11-cv-278-JD
                                                     Opinion No. 2012 DNH 041

Dr. Michael J. O'Connell's
Pain Care Center, Inc. and
Michael J. O'Connell

O R D E R

Kaitlin Hudson brought state and federal claims against her former employer, Dr. Michael J. O'Connell's Pain Care Center, Inc. ("Center"), and Dr. Michael J. O'Connell, arising from her relationship with O'Connell and the conditions of her employment at the Center. In support of her negligence claim against O'Connell and in opposition to his counterclaims for invasion of privacy and defamation, Hudson moves to require O'Connell to provide a blood sample for testing, as she proposes, to determine whether he has herpes. O'Connell objects to the testing.

Discussion

In her second amended complaint, Hudson alleges that O'Connell negligently transmitted the herpes virus to her during their sexual relationship. O'Connell brings counterclaims for invasion of privacy and defamation, alleging that Hudson falsely

told others that she had contracted herpes from O'Connell. Hudson seeks an independent medical examination to test O'Connell for herpes viruses, and O'Connell opposes the motion, arguing that Hudson cannot show good cause for the test because the existing test results are sufficient and further testing is unnecessary.

The court is authorized to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). A motion to compel an independent medical examination must be based on good cause and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). As the rule suggests, the party seeking to compel an examination under Rule 35 bears the burden of establishing that the party's physical condition is in controversy and that good cause exists to compel the examination. Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964); Flanagan v. Keller Prods., Inc., 2001 WL 1669379, at *1 (D.N.H. Dec. 18, 2001).

A party's physical condition is in controversy if it is asserted in support of or in defense to a claim. Schlagenhauf, 379 U.S. at 119. Good cause may be demonstrated by showing that

the information cannot be obtained by other means and by showing a reasonable basis to believe that an examination will provide material information. Robinson v. Miller, 2011 WL 2669304, at *2 (D. Me. July 7, 2011); see also Yarosevich v. Toyota Indus. Corp., 2008 WL 2329331, at *1-*2 (D.N.H. June 5, 2008). For purposes of an order under Rule 35 to require a party to provide a body fluid sample, such as a blood, courts have considered whether the test results would be relevant to a claim in the case, the extent of the intrusion into the party's privacy due to the test, and the protections to guard the information to avoid privacy concerns. D'Angelo v. Potter, 224 F.R.D. 300, 303 (D. Mass. 2004).

A.   In Controversy

Hudson has tested positive for herpes viruses, HSV-I and HSV-II, and alleges that she contracted herpes from O'Connell, whom she suspects contracted herpes from another sexual partner. O'Connell denies that he infected Hudson with herpes and brought invasion of privacy and defamation claims based on his allegations that Hudson falsely accused him of infecting her with herpes. Hudson's negligence claim and O'Connell's privacy and defamation claims put the issue of whether O'Connell has herpes in controversy.

O'Connell contends, however, that the issue of whether he has herpes is not in controversy. He contends that the case is about HSV-II, not about HSV-I. He provides his answers to interrogatories, stating that he has never tested positive for HSV-II; laboratory reports, showing the same thing; and the affidavit of the accused "other woman" who states that she never had a sexual relationship with O'Connell.[1] He argues that because the "other woman" denies a sexual relationship with him, Hudson lacks evidence to support her negligence claim.

Irrespective of Hudson's negligence claim, O'Connell's counterclaims raise the issue of whether he had herpes during his relationship with Hudson and transmitted the disease to her. However, in the context of this motion the court cannot resolve the question of whether only HSV-II is at issue or whether both HSV-I and HSV-II are at issue because the parties have failed to present sufficient information on the matter. The website references O'Connell provides do not establish his theory, which would likely require appropriate and admissible expert opinion evidence. Similarly, the explanation of the test results provided in O'Connell's memorandum, again with citations to

---

[1] The two laboratory reports O'Connell provides appear to be results from the same test.

4

websites, does not establish that his interpretation of the results is correct.

Therefore, although the question of whether O'Connell had herpes at a time material to the claims in this case is in controversy, the more specific issue of whether the claims are limited to one or extend to both viruses is insufficiently addressed.

B.  Good Cause

Hudson contends that good cause exists to support the blood test she seeks because another test is necessary to determine the validity of the testing results O'Connell provided.  Hudson suggests that O'Connell's test results are suspect because O'Connell owns the medical center where the test was done. Hudson also states that the test was done in response to her allegations against O'Connell and that some of the results are equivocal.

O'Connell responds that Hudson should have conducted additional discovery about whether he had or has herpes before seeking an independent test, that the test results he produced are dispositive, and that although his blood was drawn at his medical center, the testing or analysis of the sample was done by an entity he does not control, "UMass Memorial Laboratories."

O'Connell also argues that the HSV-I results are immaterial because Hudson tested positive for both HSV-I and HSV-II and because HSV-II is more commonly associated with genital herpes.

As is noted above, the court cannot determine based on the record provided whether or not both HSV-I and HSV-II are at issue in this case. If only HSV-II is relevant, then the test results O'Connell provided show that he did not have HSV-II when he was tested on December 14, 2010.[2] Hudson suggests that the test results are suspect because the blood was drawn at a clinic O'Connell owns.[3] To the extent Hudson challenges the reliability of the chain of custody of the blood sample, she has not provided any evidence, other than O'Connell's ownership of the clinic, that the sample was not properly drawn or handled. For example, Hudson provides no evidence from the person who drew the blood sample or those who processed it to support her suspicions. Therefore, Hudson has not carried her burden of showing good

---

[2] In his deposition, O'Connell testified that he was last tested in February or March of 2011, and that the results were negative for HSV-II and borderline for HSV-I.

[3] Hudson initially argued that the test or analysis of the sample was also done by a clinic O'Connell owns. The laboratory reports, however, indicate that the test results were produced by UMass Memorial Laboratories, which is not owned or controlled by O'Connell.

cause to order O'Connell to undergo an independent blood test for HSV-II.

If, as Hudson contends, HSV-I is also at issue, the results of the test O'Connell provided are unclear. The test report states that "[r]epeat testing in 10-14 days may be helpful." O'Connell apparently underwent subsequent testing but did not provide those results.

Courts generally have found that the privacy intrusion of a blood drawing for purposes of testing is minimal. See, e.g., United States v. Mitchell, 652 F.3d 387, 404 (3rd Cir. 2011); Boroian v. Mueller, 616 F.3d 60, 65 (1st Cir. 2010); United States v. Coccia, 598 F.3d 293, 299 (6th Cir. 2010). Although O'Connell argues that the test Hudson seeks would merely duplicate the testing he has already done, the test apparently is different from the test used by the UMass Memorial Laboratories. Hudson has not explained the differences, however, nor shown that the test she seeks is superior to the test done at UMass Memorial Laboratories.

The burden is on Hudson to show good cause to compel O'Connell to provide a blood sample for another herpes test. Based on the record provided, Hudson has not carried her burden. In addition, neither party has provided the court with sufficient

information to decide the motion one way or the other.  The parties can certainly undertake further discovery on this matter.

## Conclusion

For the foregoing reasons, the plaintiff's motion for a physical examination (document no. 21) is denied without prejudice to file a properly supported motion that addresses whether both HSV-I and HSV-II are in controversy and the evidentiary bases for good cause to order a blood test.  If a further motion is filed, the parties must provide the court with sufficient information to address the issues.

The defendant's request for fees and costs is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 8, 2012

cc: William E. Christie, Esquire
    John P. Sherman, Esquire